Case No. 16-7056 Michele Hall vs. District of Columbia et al. Ms. Latimer for the appellant, Ms. Pittman for the appellees. Good morning. Good morning, Your Honor. My name is Gregory Latimer and I represent Ms. Michele Hall. In this matter, the two major issues before the court regard the granting of the motion to dismiss based upon the pleadings and the motion for summary judgment. I'll start with the motion on the pleadings. And I will submit to the court that the 10-count complaint that was submitted by the plaintiff in this case did not allow for any of the claims to be dismissed solely on the pleadings. The suggestion that the plaintiff's complaint provided a basis for probable cause finds no support within the confines of the complaint. It is alleged quite clearly by the plaintiff that no probable cause existed for her arrest and the officer herself admitted that she did not believe that she had probable cause, that she was simply being detained for purposes of conducting an investigation. The allegation that she had a broken wrist, the trial court at least determined that that provided a basis for the battery to continue but in some way determined that the claim for excessive force under 1983 did not because qualified immunity protected the officer. And that finds no support in the law. The basis of the dismissal for negligence and infliction of emotional distress that is accompanied by physical injury in the District of Columbia, there is nothing contained in the complaint that would justify dismissal of that particular count. The complaint clearly alleges assault, that she was in apprehension and fear. There's nothing within the confines of the complaint that provides a basis for the dismissal of the complaint. So I would submit to you that the ruling in that regard was entirely in error and totally unsupported by the law, which says that the complaint is supposed to be viewed from the standpoint of whether no claim identified can be supported at all. And clearly, if you will read the complaint and accept the allegations of the complaint as true, which you must do at that particular point, then a reasonable juror could find that all of the 10 counts were adequately pled with respect. Did you say that Officer Lee admitted she didn't have probable cause to arrest and was just detaining her for investigation? Yes. And where is that in the record? Yes. Where is that in the record? I didn't see it in the complaint. But I missed it. Page 173, she talks about they were detaining her. And specifically, I believe on, when I say 173, I'm referring to the joint appendix. And on 168, she was specifically asked, OK, so she was being placed under arrest. And no, she was not. She was being detained while we conducted our investigation. So she clearly indicated what she was doing. But the significant part of that was, instead of conducting the investigation prior to doing the detention, they did the detention and then conducted the investigation, which puts this into a whole other realm. Because if you're going to go on an allegation of probable cause, I think the law is clear that a police officer has an obligation to at least conduct some type of investigation if there is evidence that exists that would exonerate the individual. And in this case, by the officer's own words, they didn't even consider an investigation until after they had burst into a bathroom while she was relieving herself, handcuffed her, drug her out through a restaurant into the street, kneed her in the back, intentionally inflicted pain upon her, causing her to have a broken wrist. All of that was done before any investigation at all was done. Mr. Latimer, are you relying on D.C. Code Section 25-381A1C, which is the provision you know that says if there is a misdemeanor that the officer herself did not witness, that in order for an arrest to be made, there has to be something more than just a report of a misdemeanor. There has to be a concern that the individual might flee or is a threat to the officer or such. Are you relying on that? We're relying on that because that's the general law, but I don't even think you have to go that far. Because in this particular case, the trial court determined it was qualified immunity. And I'm not aware of any case, especially in this court where this court has ruled that force without reason is unreasonable, period. And so when you have a situation where you are using force against an individual who is compliant. I follow that argument, and I think that's clearly made in the pleadings and in the briefs. But I'm also thinking about not just the force, but the separate question of whether there is a false arrest claim. And we know from the Supreme Court's decision in Atwater v. Lago Vista that even a misdemeanor may support an arrest. And so to some extent, as your client pleads it, and as the record taking the light most favorable to her shows, arguably not only the force is disproportionate, but the decision to arrest her seems at least arguably disproportionate. And I'm trying to get at the basis for that claim given Atwater v. Lago Vista, in which, as you know, the individual who was stopped for not wearing a seat belt was arrested and taken down to the station. And the Supreme Court said, yeah, that's okay, because there was probable cause in the officer's presence. And so what I'm trying to get at here is, are you distinguishing Atwater? Are you saying it's because it's not in the officer's presence and that's what makes the arrest unlawful under D.C. law, potentially federal or both? Well, I think that what we're saying is a twofold response to that question. First, it wasn't committed in the presence of the officer, and therefore the officer needed more than just the word of the individual. And that's why we don't believe the arrest was appropriate. But in this particular case, even assuming that it was an arrestable offense, the probable cause component is lacking. You have a situation, and that's why the facts were important. Because in this situation, you had an individual who came into the restaurant, was given a hand stamp for entry and reentry. So it wasn't just... that the officer knew those details. All we know is that the officer was summoned for some walking out on a hefty check. And without pleading or evidence that Officer Lee was aware of what you point to as potentially mitigating circumstances, doesn't she have probable cause? And so my question is, what would prevent her, other than D.C. Code limitations, from an arrest under the Fourth Amendment? Well, I think that we cited several cases, albeit not from this circuit, from the Eleventh Circuit, that indicate that, and the Seventh Circuit, that indicate that probable cause, an officer has an obligation to at least conduct a minimal investigation. As opposed to, in this particular case, they didn't even respond to the restaurant. They responded based upon the description of the individual that they saw in the restaurant across the street, and then they burst into a bathroom. They knew nothing other than there was a report of an individual who had not paid a bill and who had left. Can I hang on and ask that? What in the record shows what the investigation or non-investigation consisted of? I'm sorry? What is in the record about how much investigation, or how little, the police officer did in this case? We have the 911 call. But I don't know what's in the complaint. It doesn't say what investigation occurred. Well... Or not. I mean, what evidence do you have that there was no investigation? Do you have... Page 173 of the Joint Appendix. The officer herself says, once we detained her, we needed to make the scene safe for us, so we weren't able to conduct the investigation until after the scene was safe. Right, you have stages in the investigation. So my point is, apparently someone knew to tell them that she was in the bathroom at a different restaurant than the one that had placed the call, so they must have talked to somebody. Is a transcript of the 911 call? I haven't seen that. Was that ever obtained? Or how did they even know that she was in the bathroom at 19th Street? They must have done some investigating. The... My understanding, based upon deposing the officer, was that they saw her when they arrived on the scene going into the other restaurant. And so that's why they went to that restaurant. Because she had on a yellow dress, she was the only person that fit that description, so they went to that particular restaurant. Okay, so back up, because the complaint doesn't tell me what the 911 call said. So now you're telling me that the 911 call, is that also in the... Do we know what was communicated during the 911 call? The 911... I mean, the complaint does not contain that type of detail, no. But does your deposition of the officer or something in the record tell me... Because you're saying the yellow dress, so someone must have told the police that there's a person, maybe they named her or not, that has walked out on her bill, and now you're telling me they must have said something identifying like yellow dress, because then they saw her and followed her into the other bar or restaurant across the street. But where is that coming from? I'm trying to figure out how we know... What you're saying, that they followed her into the other restaurant? Well, that's what you said. I'm saying, you're saying, where is that in the record? Or that they knew they were following her. How did they know the person in this bathroom was the same person who had walked out of a different restaurant five or so minutes before? Because I'm just trying to figure out how much investigation or not the officer did before breaking into the bathroom. Page 168 of the joint appendix, where I asked the question, I'm trying to understand that part. I'm trying to understand why was she put in handcuffs. Answer, the lookout for the individual was quite specific. Black female wearing a sundress, yellow sundress. She was the only individual matching that description for an alleged crime of theft, one of services. So that must have come, I assume, that had to come from some source of information. The police had to get that. I'm assuming that was from the 911 call. Maybe the 911 caller described what she looked like to the police. Is that the assumption? Well, when you say lookout, that's what it appears to be, Your Honor. Okay. All right. So is there any case law on whether a 911 call that is not anonymous, so it comes from an identified individual that says, Officer, I have just witnessed a person walking out on a bill and I'm in the restaurant here. They ran up a bill. They've walked out without pain. Here's the description. What is the case law on whether that is probable cause or reasonable suspicion, at least to detain? Well, I don't think there's any doubt that it's not probable cause. It would constitute a reasonable suspicion. And you would have, I believe any police officer would have a right to approach the individual and detain that individual for further investigation. If a witness came up to an officer on the street and said, I just saw this woman steal something from the restaurant, the woman over there in the yellow sundress, I just saw her do it. Is that reasonable suspicion or probable cause? Reasonable suspicion. But again, if the individual attempted to flee or resist, then the officer would have the right to use reasonable force to continue that detention. But in this case, you don't have any of that. In fact, the officer denied even going in the bathroom. The officer said it wasn't me. It was somebody else. And so it is not possible for that officer to have been provided with qualified immunity when the officer denied that she even was involved in the situation. And there are three witnesses. So that's not, I mean, to be fair, that's not how qualified immunity works. We take the facts and the complaint and the lie most favorable to your client. And we say on these allegations or on the record, when you have more of a record, could a reasonable officer or was it clearly established that no reasonable officer would have detained in this in this manner in this case? Right. Isn't that our inquiry for purposes of your constitutional claim? Yes, especially since there are three witnesses, two other witnesses, rather, who fully support what the plaintiff said, were there, were in a position to observe exactly what happened and who testified that when one of them, when he tried to intervene to ask a question about the amount of force being used, he himself was handcuffed and slammed on a car. And they observed the officer inflict intentionally pain against Miss Hall when she would cry out in pain and she would hold up the handcuffs to inflict more pain. Let me ask you about the allegations against Mr. Daru. As I understand the record, as I've read it on summary judgment, I don't see evidence linking him to the call that went out from cities. It appears to have been a different individual who made that phone call. And so I'm wondering what evidence, if any, keeps him in the case at the summary judgment stage as distinct from the restaurant itself and perhaps some other employee at the restaurant. I think that the evidence was that Mr. Daru was in the restaurant. He is a manager of the restaurant. His position was that he wasn't working that night and therefore it wasn't his responsibility. However, the plaintiff indicated that she was, when she asked to speak to a manager, she was directed to Mr. Daru. She got into a dispute with Mr. Daru about it. And then one of the other employees of Mr. Daru, Miss Urquhart, called the police when she was brought outside of the restaurant. Mr. Daru was there, nodding his approval, according to her, of what the police were doing. So for you, that's circumstantial evidence that it was Daru's directive, Urquhart was just the person carrying it out? I thought there was some dispute in the record whether Daru was the manager. Well, there was some dispute. The dispute in the record was, was he working that night? There's no dispute that he was a manager. And he was present. And he was present. He indicated that he was only there enjoying an evening with friends. But the plaintiff's testimony was that she was directed to him when she asked to speak with a manager. And if I just could jump on one other point. The suggestion by the trial court that there was no evidence of a broken wrist, when the record is clear from her medical records that she was diagnosed with a fractured wrist. She was treated as she had a fractured wrist. She was in a sling for six weeks. And the only evidence to the contract was from Dr. Brindle, who said that she was unable to see it on x-ray, even though she testified that an occult or a small fracture is not something that you would necessarily see on x-ray. You would need an MRI. You also claimed in the complaint that she had nerve damage, correct? Nerve palsy. Yes. And was there any evidence from the other side disputing the nerve palsy? They said that there was no evidence of that, but there is evidence that she was given the E. But you had, did the doctor diagnose the nerve palsy as well? That's what the plaintiff indicated, yes. Okay. And they didn't, even if one were to assume there wasn't a break, she was in a splint for six weeks? Yes, Your Honor. And they didn't introduce, you had evidence of the nerve palsy? Yes, Your Honor. Right. And that was not countered by anything on the other side? No, Your Honor. Okay. So is there any reason to think that nerve palsy in a splint for six weeks, even if there wasn't a break, wouldn't be relevant evidence of excessive force? Well, I think that the entire record indicates that, but yes, and that's why I say, I simply don't comprehend that there was no evidence of record to support plaintiff's position. And I had a question, one more about a record thing, if you can help me with, on, am I right that the line between misdemeanor and felony for theft of services is $1,000? To be honest with you, I thought it was $300, but maybe I'm wrong. There is no evidence of record as to, there's nothing indicated that the 911 call relayed the amount of the theft. There's no evidence of record from Officer Lee that she knew of the amount at issue. In fact, the evidence is that she first found out about the credit charge after the fact, and what she found out, according to her, was that the credit card had been declined. Whereas we know that the credit card had, in fact, been charged before they called the police and had gone through, and so there was no outstanding bill at all when they called the police. It was simply misinformation. And then you have a conversion claim, and there was something in the record about money having been put in the book. Is that the little bill thing they give you that's folded? Is that what the book is? The testimony from Ms. Hall was that it was her birthday, and so everybody was contributing, and so when they brought the bill initially, they put money into the folder to pay the bill, which they left on the table while she continued to try to resolve it. That money was taken in addition to the charge on her American Express bill that went through, and so the conversion related to the money that was placed on the table, even though they had received payment from American Express. Is there any evidence about how much money was on the table, and if not, do you need to have an established amount of money taken? Do you have to identify how much money was taken to have a conversion claim? I don't believe that you have to have an exact amount, but I think that the testimony from the plaintiff was it was several hundred dollars, but to precisely answer your question, which was do I know how much it was, the answer is no. All right. Why don't we hear from the government, and we'll give you some time on rebuttal.  Good morning. Good morning. May it please the Court, I'm Lucy Pittman on behalf of the District of Columbia and Alice Lee. We're asking that the Court affirm the District Court's orders here, and I'm going to start with the motion to dismiss and specifically the probable cause determination, because I think that really was the focus in the challenge on the dismissal. As we know, an arrest is proper if there is probable cause, and I think the District Court was right in stating that the complaint contained sufficient information to warrant Officer Lee to believe that she had probable cause. And really quickly, I'm going to note, there isn't anything in the record that Officer Lee stated she did not have probable cause. Could I just ask you, what are you relying on in the complaint? Sure. So there are a couple of things in the complaint. One is that there is a paragraph in the complaint in which the allegation is that Mr. Duru, a manager from Cities, called in and reported theft. What paragraph is that? Paragraph 36. That he called the police and falsely accused Plaintiff Ms. Hall of theft. And then in addition, we have that Ms. Hall was no longer on the premises of Cities when Officer Lee arrived, so she was no longer there. So she did, in fact, run out on her bill. She has left. And when Ms. Hall asked Officer Lee why she was being arrested, the response was theft for services. So Officer Lee, at that point, did know the contents of the 911 call sufficient enough to know that Ms. Hall was being accused by the manager of Cities of theft of services. So what evidence is there beyond this 911 call accusing someone of theft of services to establish probable cause? Is a 911 call by itself sufficient? I think a 911 call from a manager of the business is sufficient. Probable cause can be established with trustworthy information. I've looked at a lot of cases and every 911 call, including two courts of appeals involving theft of services in particular, require more than just a 911 call. Right. And I don't know to what extent we can start going into. We do have a more fully developed record. And so we do know that when Officer Lee arrived on the scene, she did talk to the bouncer. That's at the Joint Appendix 173. That was dismissed on the face of the pleading. I realize. I realize. So on the face of the pleading, we have. Unless you think under case law, we can look at stuff after the fact? Maybe I'm on unqualified immunity. I don't know. I don't know. I mean, we do have the more fully developed records, so we know that it's there. But to focus more on the actual complaint, we do have that. And I think we get to make some inferences in favor of the officer when we look at what is it that she knew at that moment. And I think that the questions that you are asking, Mr. Latimer, go to the heart of that, which is that she obviously knew something because she knew where to find her. She was no longer at Cities. And so she had enough information from a trustworthy source to locate the individual fairly quickly at 19. What makes you say that's a trustworthy source? I haven't found any case law to indicate that when you get a call from a business, that that can't be deemed a trustworthy source on an accusation of theft. It certainly could be, but the question is, without more, is it? I mean, just as somebody, a family member could call, a neighbor could call, it seems that the Supreme Court has referred and the common law refers to arrests of misdemeanants who have committed the infraction in the presence of an officer. And I'd actually be interested in your view why the presence of the officer might matter and whether, in fact, it's because of these issues of, you know, reliability and people get overwrought about things sometimes. Sometimes they're absolutely trustworthy and accurate, and sometimes they don't really know what's illegal and what's not. Right. Well, I think an officer is allowed to rely on information that would be, based upon her perspective at that moment, deemed trustworthy. I don't think that there's anything in the record to indicate that she shouldn't have trusted the business owner. And to your point, I will say that in the reply brief, Ms. Hall cites to this Moore case, Moore v. Marketplace, a Seventh Circuit case. I shepherdized that, and I actually think, I don't think Moore is as determinative as Ms. Hall would claim, and I also think that there's a case out of the Eighth Circuit, Royster v. Nichols. And I can give you the site. It's 698F3rd, 681. Was that in your brief? It's not because it was something I shepherdized from his reply brief. The Moore came in the reply brief. 698 at what? 698F3rd at 681. And I do apologize that I'm bringing it up now, but there we do have a very similar factual situation. An individual went to a bar, opened a tab with a credit card, left the credit card, left the bar without closing the tab. The police were called and a report of that he didn't pay his tab. And, indeed, actually there the officers knew a little bit more. They knew that the restaurant had the credit card. They knew that the restaurant had swiped the credit card, and yet they still said that was sufficient for probable cause. And they distinguished Moore by pointing out that in Moore there wasn't a specific ordinance that was in violation when the individuals there left the restaurant, whereas in the Eighth Circuit they have theft of restaurant services and in the district we have theft of services. Ms. Pimlin, speaking of the code, I think I might have misspoke in terms of the number, but I'd be interested in your view on whether this arrest was consistent with D.C. code. I think it's Section 28-581, which, as I understand it, codifies my preliminary understanding of the common law view, which is that when a misdemeanor has been committed outside of the presence of an officer, the officer may only arrest when the officer has discerned that either there's a risk of destruction of evidence, there's a risk of flight, or the individual may pose a risk of harm to someone. And how were any of those elements met? Because surely that's an obstacle for, at least for the D.C. law, false arrest and false imprisonment claims. Sure. And this wasn't briefed below, so I apologize. I am probably not as prepared as I would normally be to address this. But I will say that also on Joint Appendix 173, Officer Lee does describe that Ms. Hall was viewed as being a flight risk because she was no longer on the scene having left the restaurant and leaving this bill. Now, how do you make sense of that, though, given that the allegations show Ms. Hall to have been in a single-stall confined restroom and Officer Lee and another officer are outside of the restroom? The risk of flight is what? Well, I don't know that she's specifically saying the risk of flight is specific to her just being in the restroom. I read her stating this, that she was seen leaving the establishment, and based upon that, she was considered a possible flight risk. I'm asking you, how do you defend that standing here? Is there anything about the situation that you think for a reasonable officer does pose a risk of flight? I think the factual situation that the officer was faced with where she knocks on the door of the restroom and she gets a response, some sort of response, that it's occupied. The most routine response. That's right. That's absolutely right. The thing all of us would have said. And no one thinks she's flushing evidence down, right? She knocks again and announces that it's the police, and that's when she gets silence. There isn't another response. So I don't know what is running through Officer Lee's mind at that time, but she does know that there's an individual who's now ignoring her. She doesn't know. The question was flight risk. That's right. And I don't know if Officer Lee suspected that there was a flight risk there. Does she know that there is another exit? Does she know that the individual isn't armed? You know, those are things that I don't think we know. Judge Pillard's question. What more has to evidence support probable cause for a misdemeanor not committed in the office? So you admitted basically no flight risk. No evidence being flushed. Right. We have that the officer was concerned about it being a flight risk. We can question whether that was a fair assessment on her part. And we have that she's no longer on the premises of cities, thus. Well, there's a mens rea element to the statute, so there has to be some evidence of that because I think it may be common knowledge that people go in and out of bars at night because they have this stamp mechanism. So are you telling me that it's probable cause anytime someone leaves a bar at night? I think to arrest them. And because they left the bar, we can treat them as a flight risk? I think that the elements of theft of service where it does indicate that leaving the premises is one of the elements without paying the bill, I think that that is sufficient for probable cause purposes. Anybody who walks out, they get the stamp on their hands, they walk out, they're a fighter. When my kids were little, they wanted a birthday party at Chuck E. Cheese. We walk in, we get stamps on our hand, and we start having the birthday party, and I'm in and out to the car getting stuff for the party. I haven't paid. You're telling me that when I walk out of Chuck E. Cheese, I could have been not just stopped in question, but arrested, detained for 48 hours, strip searched, all the things that come with an arrest? No, and I think that the factual situation is important here, which is that I don't believe you would have disputed the bill at Chuck E. Cheese and then left the bill there and left. And so we need to be mindful of the fact that— Wait, where is there evidence on the pleadings that they were told it was a disputed bill? And I apologize, I was going into the record because the stamp also— Which is only fair because it was just there. Well, I agree, but the stamp also isn't— I'm just talking about common practice. I'm not talking about that they knew it was on there. But it's common practice. Because I don't think it is common practice to go to nightclubs and rack up $1,000 bills and not pay. The stamp is there so that she doesn't have to pay cover charge again. It's not a license for her to come and go and ignore her bill. But she's not ignoring her bill. If you're going into the record, she has her license and her credit card are with the management. Her purse is still in the restaurant. Her friends are still in the restaurant. Her several birthday gifts are still in the restaurant. The table is still occupied. So once one gets past the pleadings, the concern about not only whether there's any flight risk, but whether there is, in fact, any ground for cause to think there's been a violation is a little bit hard to square. Right. Except that here she doesn't explain that she's coming back in. The difference between the Chuck E. Cheese and here is that I have no doubt everyone knew that when you were coming in and out, she'd come in. I apologize. She's going to leave her license and credit card there and all her birthday gifts. And her friend. And her friend. Who's in touch with her by text. Right. But the police are not aware that she's left those things. Because they haven't asked. And one would think that under at least D.C. law, it's explicit that there's an obligation to refrain from arrest. As I understand it, and I think it's an open question, too, in the Supreme Court given Atwater v. severe than a mere stop and question. Right. And once you get down to the lowest level of violations, like a misdemeanor, and you get into a terrain where the only basis for thinking a misdemeanor has occurred is a third party's report, there is arguably reasonableness requires a little bit of a threshold investigation. Ma'am, when you're going out to get the juice boxes or the, you know, the extra wipes in the car, you are coming back, aren't you, before you call the police or before the police actually slam you on the ground in response to that. And that just, I mean, that, I see that as an open issue under the Fourth Amendment, and I wonder if you have a different view, what your position would be as a representative of the District of Columbia on what the Fourth Amendment does or doesn't require there. I think in this case that we have, that Officer Lee did have sufficient facts to warrant arresting Ms. Hall, given what she knew at that time. We do have to look at it from her perspective. And what she knew at that time was that she had this report of theft, that the individual had left the premises. Also, on Joint Appendix 173, she does describe that when she arrived, she did talk to an employee of the restaurant. I don't think she says that. I think she said she talked to the bouncer. The bouncer is who called. She said she talked to the bouncer at the establishment who placed the call. Who placed the call. Later. So Ms. Hall was stopped, provided through our 911 call, and also through the bouncer who placed the call. I think it's unclear, and if you're reading that in the light most favorable to the plaintiff, it's the information transmitted in the call. In addition to, I guess I read that as who worked at the establishment who placed the call, the bouncer who worked at Citi's. Yeah, who placed the call. I think it's ambiguous as to whether they're just talking about the information transmitted in the call or whether there's any, I don't think that you have to read that, that she went over and actually also talked to the bouncer. That wasn't how I read it anyway. But I see your point, but I'm just saying now that you've said how you read it, I'm saying, well, okay, at least there's an ambiguity, but we're in summary judgment. Like to write a dismissal. We're not defending a jury verdict. Dismissal on the pleading is on this claim. Right, so the dismissal, right, and so then we're left with what's in the complaint itself. In your Royster case, they didn't arrest him until he refused to sign the receipt, so they did more investigation there. They did. They took a look at the receipt, and she signed it, but they'd already arrested her. Right, right. Although from the restaurant's perspective. I think that adds to the list of 911 cases where someone had to do something more before they could arrest. Right, but the fact that the credit card had already been swiped and was going to be paid regardless in that case, and here, you know, the restaurant does have a similar situation. Just back to my question about if you've got, so now you've given us a third court of appeals case that is required more than just the 911 call for theft of services in particular, not general Fourth Amendment. For theft of services in particular, do you have any case, court of appeals, state court, trial court, that has said just the 911 call for theft of services, not a violent felony or anything, is sufficient to arrest? I do not. I would proffer that there's more than just the 911 call here, but I do not have that. On the pleadings. That's right, on the pleadings. And just to be clear, I want to make sure I understand your position. The more is that when they knocked on the door of the bathroom and she said, someone's in here, and then she said, police, and then the officer barged in. Does the complaint say how much time elapsed? That's right. It doesn't. It doesn't indicate other than that she was able to put her clothing back on. But I think that in addition to the fact that they were able to locate her, and so there's a. . . I don't. . . The description was, it's a robbery and the person has a face mask on and a bag of burglar tools that might help. But I'm not sure if someone who's just, if all they said is yellow dress, that that's. . . Does that have anything to suggest that she's committed a crime? No. I guess what I was referring to there, I think, harkens back to the question you asked Mr. Ladner about the fact that she clearly did something because she was able to locate her so quickly. And that's why I'm going beyond. . . Well, we're assuming that there was some description of the person. That's right, so that she was able to locate her fairly quickly, located at Cities. Can you fill in on, we have a little bit of, I thought it was $1,000, under $1,000 is misdemeanor. Mr. Ladner mentioned maybe $300. What's the misdemeanor threshold? I don't actually know which of those two numbers is correct. I know that here it was $1,100 and some change that we were talking about. I think in the complaint it was $900 something. No, the bill was $1,100. I think it was as alleged. I'm just saying as alleged. Yes, that's right. Because there was that whole question about the tariff. That's right. Anything further? I'd like to move on to the excessive force. All right. If I can take just a few minutes. So we know there's a qualified privilege for using reasonable force in the course of an arrest. And here I think that while Ms. Hall has made a number of statements that she wasn't intending to resist arrest, I think that the district court got it right in pointing out that there were a number of instances in which she was actually acting contrary to the officer. Well, weren't those instances after most of the roughness had happened? The trying to stand up and the turning around, which is just turning around to ask the officer a question, all happened after the barging into the bathroom, throwing her against the wall, handcuffs too high, pushing her too tight, arms up in the air. That was all before trying to stand up or turning to face the officer. So what was there, even assuming there were probable cause here to arrest, what was there to show that that level of force was needed? Sure. The resistance actually started in the bathroom. The officers asked her to put her handcuffs behind her back, and then they had to forcibly put them behind her back. I don't think that's – so, again, because they're the two opinions, I recognize that it's confusing. And we've actually, in discussing the claims that were dismissed on motion, we've also gone into the record. But if we confine ourselves to the complaint, because the excessive force wasn't dismissed on the complaint. No, that was summary judgment, Your Honor. The excessive force was the summary judgment. Are you talking about Fourth Amendment or are we talking about battery? Battery. Okay, I'm talking about the Fourth Amendment, Section 983, excessive force. I don't believe that there's much actually in the record in terms of the court actually dismissing that or that it was even challenged necessarily. The district court sort of seems to have skipped over it, but I think we sort of have two buckets here. We have the calling out and relying on the making of a 911 call, whether there's a basis for any of that. And then we have this force, and I know that there are several theories on each. So I guess we have – what you're pointing out is that we have both a pleading stage dismissal on the force reasonableness and a summary judgment stage dismissal. And on the pleading stage dismissal of the Section 983 claim, I guess the question is, do you think the pleading suffice to show excessive force and that the justification comes in only when the record is flushed out? I'm not sure. I read Judge Leinberth's order as dismissing an excessive force claim at the dismissal level. I view that he had moved that to the summary judgment stage. I also don't know that I read Ms. Hall's opening brief as challenging that as being an error, that he addressed the excessive force claim. Okay. So we just treat the excessive force as having been sustained on the pleadings and dealt with on summary judgment. That was my reading of it, yes, Your Honor. And there I think that we do have, to go back to answering your question, the level of the resistance kind of beginning in the bathroom. Ms. Hall's testimony was that from the very beginning, she kept trying to turn around even in the bathroom in a direction opposite of what Officer Lee was expecting. And so by the time they get out of the loud restaurant and outside. Do you make any argument that the failure to open the door was resisting arrest to the bathroom, or do you start once they're inside the bathroom? I think it certainly adds to what Officer Lee's thinking. So it's part of it. So I do think it is part of it. How can you resist arrest without anyone having told you you're under arrest? I don't know that I would say that was necessarily affirmatively resisting arrest. I think that what I'm saying is when you look at it. Well, it's either a factor in resisting arrest, or I would think you would have to have someone tell you you're under arrest before you can resist arrest. Is that not required? I think it's a factor to her not cooperating. I don't know that any one of these things individually by itself you could then say is resisting arrest. I think we have to look at the totality of it. When did the officers tell her you're under arrest? When she's walking out and she asks why, and they said for theft of services. No, that was why you got me in handcuffs. But at least according, again, looking at the summary judgment record, even the officer says it was a detention, not an arrest. Can you, is it, how much force can be used for a reasonable suspicion of detention rather than an arrest? I know we can do a pat down. Right, right, and I think in this context, I know that there's been discussion of whether it was a detention or an arrest. I think Ms. Hall's allegations of it being an arrest, she was in handcuffs and wasn't free to go to the squad car. Is there any place in the record where Lee said you're under arrest so that she knew she was resisting arrest? I don't see that anyone has developed the record in that regard in terms of what was said there. I don't see either a denial or an affirmative response. And are there cases, I guess, again, are there cases that you're familiar with just in your experience that if they feel like they're detaining someone for investigation based on reasonable suspicion, they can obviously stop the person from moving, they may be able to pat them down, but how much force can be used when someone's not trying to flee? I mean, most of those cases that I'm familiar with are in the arrest context rather than the detention context because if you are forcibly trying to stop someone from moving about, that takes to the arrest context. And that's why I believe here Officer Lee's label, I think, isn't what's key or determinative. But going back just real quickly, so we've got this level of resistance or not cooperation where she does continue to swing around on the officer, try to face the officer and move about. I would say that the level of force here that was used is clearly tied to that level of resistance. This isn't for a non-legitimate purpose. Everything of trying to keep her down to the ground and those things are all counteractive to the level of resistance that Ms. Hall has explicitly stated she did. As a matter of summary judgment, really? I mean, as a lawyer, you say that? I mean, if she had – so she's being held in a kind of in-between. She's being made to kneel down, but her arms are being pulled up. She's really in pain. Her knees are bare and being graced on the ground. I guess one thing maybe she could have done instead of tried to stand up is just gone completely limp and lay down so that she would no longer be in that in-between sort of suspended, very uncomfortable position. I could see you arguing then on your same theory that lying on the ground was resisting arrest and that the officer was warranted in yanking her up by her handcuffed hands. So I just think at the summary judgment stage, I find it a little hard to think that that isn't exactly the question for the jury on this record. And they might find that Officer Lee was in fact warranted and or that the circumstances were such that under the law it would support equality. I mean, it's a little hard in the summary judgment stage, no? Well, what I find somewhat interesting about this is that – so Ms. Hall is admitting that she's trying to move in a manner that's contrary to what Officer Lee is expecting. And Officer Lee doesn't know why she's trying to move in that direction. She says she's trying to stand up. At one point, Ms. Hall affirmatively states, I'm trying to stand up, and Officer Lee stood her up. The problem there is that she then immediately swung around on her, and so Officer Lee places her back on the ground. I think from Officer Lee's perspective, and we do have a little window into her perspective because Ms. Hall's testimony was that she continually kept saying to her, stop resisting when she was moving in this contrary manner. And I think that that is sufficient here where you have Ms. Hall's own testimony explaining what she's doing that the officer is referring to as resistance. All right. I'm sorry, just one more question, though. In your experience, the one thing I just kept asking myself in this case, is this how D.C. routinely handles small disputed thefts of money? This is not a violent offense. It's not whether it's just above or just below the misdemeanor line. There was no reason to think there was any destruction of evidence, any threat to the public. They normally go breaking down doors into single-stall bathrooms and throwing people against the wall and hauling them outside for public humiliation and pushing them down on the ground. Is that normal? I think all of us could probably conclude that it wasn't done the way we would want it done or the way that is expected, but I don't know that we would conclude, or at least I wouldn't conclude that it was unlawful. I'm not asking you to concede anything. I'm just hoping that this is not D.C. law enforcement policy. No, there are certainly, I think, a number of steps that, in hindsight, we could say could have been done differently. All right. Thank you. Thank you. Just briefly, I think the last question was very insightful because the problem here is that a jury should have been able to make a determination as to whether these things were appropriate or not and not the court saying that this shouldn't go forward. And the court did address the Plaintiff's 1983 action on JA 55 and 56. I mean, the court specifically, 1983 is alleged in count one. This court specifically addressed count one and said that he was granting the motion because of qualified immunity. Well, 1983 is a pretty vague label. I think what we're just trying to figure out is whether your complaint, your arguments in district court specifically carved out, in addition to the no probable cause to arrest, did you also have a Fourth Amendment excessive force claim? Was the district court on notice that when you said 1983 claim that it had both aspects of it as opposed to separate battery? Well, I think that if you read the complaint itself and it talks about the physical injuries that were caused by the violations of the Constitution, that that puts the court on notice that it involves an allegation of excessive force. And, again, even if you're going to do this, then the appropriate thing as opposed to dismissal with prejudice would have been to dismiss it without prejudice and have the plaintiff amend the complaint. But to dismiss it, if you don't understand that that's what it's about, to dismiss it as you did and not give the plaintiff an opportunity to clarify and do it on the basis of qualified immunity, it, I think, is not supported in the law. I see that I'm out of time, so if there are no other questions. Can I ask you one procedural question? Sure. Because there's been some talk here. It gets a little odd because we have some claims dismissed on the pleadings and others on summary judgment, and the summary judgment battery evidence kind of may have some relevance to the constitutional claims. Since there is a record, would you think it fair to treat this as a summary judgment dismissal, or did you not develop the record on your constitutional claims in a way you would have liked to because they were dismissed? Do you think the record on the battery is sufficient for analyzing the constitutional claims and that we could look at that evidence, or do you prefer that we address that only as dismissal stage? Well, the answer to your question is yes and yes. We weren't given an opportunity to develop the 1983 claim because it was dismissed. However, when you look at the battery claim, I believe that the evidence surrounding the battery claim fully supports a 1983 claim for excessive force as well as the assault and battery claim as well. So I don't know if I can answer it better, but from both what you're saying, yes, we didn't get a chance to develop it, and that was unfortunate, and that's one of the things that we're complaining about now. You're not making a Section 1983 false arrest claim, are you? The 1983 false arrest claim was made, yes. You are, and you're making a Section 1983 excessive force claim. Yes. And you're making a common law battery claim, false arrest, false imprisonment under D.C. law. Assault and battery, negative infliction of emotional distress, intentional infliction of emotional distress. Did you address the infliction of emotional distress claims at all in your appellate brief? Yes. Where in your appellate briefs? I didn't see those claims. I saw the other ones. I didn't see those. Page 17. Okay. I'll look at that. Thank you. Negative infliction of emotional distress. All right. Oh, okay, but against – that was against cities in Daru. Okay. Not against D.C. or Lee. Okay. All right. Thank you. Thank you, Your Honor. We'll take the case under advisement.
judges: Rogers, Millett, Pillard